Howard McDOUGALL, Thomas F. O'Malley, R.V. Pulliam, Sr., Robert J. Baker, Loran W. Robbins, Marion M. Winstead, Harold J. Yates and Earl L. Jennings, Jr., as Trustees of Central States, Southeast and Southwest Areas Pension Fund, Plaintiffs,

v.

Raymond J. DONOVAN, Secretary of Labor, Defendant-Counterplaintiff,

Howard McDougall, Thomas F. O'Malley, R.V. Pulliam, Sr., Robert J. Baker, Loran W. Robbins, Marion M. Winstead, Harold J. Yates and Earl L. Jennings, Jr., Individually and as Trustees of Central States, Southeast and Southwest Areas Pension Fund, and Earl N. Hoekenga, and Central States Pension Fund, and the Central Conference of Teamsters, Counterdefendants.

No. 81 C 5891.

United States District Court,
N.D. Illinois, E.D.

Nov. 23, 1982.

James L. Coghlan, Coghlan, Joyce & Nellis, Francis Carey, Marvin Gittler, Asher, Goodstein, Pavalon, Gittler, Greenfield & Segall, Ltd., Chicago, Ill., for plaintiffs and counterdefendants.

Kenneth G. Anderson, Jacksonville, Fla., for Hoekenga, counterdefendant.

Jim Shoemake, Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for Central States, counterdefendant.

M.J. Mintz, Dickstein, Shapiro & Morin, Washington, D.C., for The Central Conference of Teamsters, counterdefendant.

Edward Moran, Asst. U.S. Atty., Chicago, Ill., S. Michael Scadron, U.S. Dept. of La-

bor, Washington, D.C., for defendant-counterplaintiff.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs ("the Trustees"), trustees of the Central States, Southeast and Southwest Areas Pension Fund ("the Fund"),[1] filed a complaint against the Secretary of Labor ("the Secretary") seeking, *inter alia,* a declaratory judgment that the Trustees' acquisition on behalf of the Fund of a Falcon 20F jet aircraft from the Falcon Jet Corporation ("Falcon") was not a "prohibited transaction" under § 406 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1106 (1976). Falcon had acquired the aircraft as a trade-in from the Central Conference of Teamsters ("the CCT").

The Secretary responded with an answer as well as a counterclaim against the Trustees individually and as trustees alleging, *inter alia,* that the acquisition in January, 1979, of the 20F aircraft and the leasing of hangar space by the Trustees from the CCT since at least 1975 constitute "prohibited transactions" under ERISA § 406, 29 U.S.C. § 1106, and that the on-going ownership, modification and usage of private aircraft by the Trustees since at least 1975 constitute breach of their fiduciary obligations under ERISA §§ 404, 405 and 409, 29 U.S.C. §§ 1104, 1105 and 1109. The Secretary joined as counterdefendants the Fund, the CCT and Earl N. Hoekenga ("Hoekenga"), a former trustee of the Fund.

The matter is before the Court on various procedural motions of the parties, motions to dismiss Hoekenga and the Fund, cross-motions for partial summary judgment on the counterclaim and a motion by the Trustees for summary judgment on their complaint. Jurisdiction is invoked pursuant to 29 U.S.C. § 1132.

### I.

Counterdefendants Hoekenga and the Fund each move for a more definite statement of the counterclaim under Rule 12(e), Fed.R.Civ.P. Both contend that the counterclaim is vague and ambiguous, making preparation of a defense impossible.[2]

■ Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain a short, plain statement of the claim, indicating that the plaintiff is entitled to relief. "[A] complaint is sufficient if it 'will give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Mathes v. Nugent,* 411 F.Supp. 968 (N.D.Ill.1976), citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). *See Archie v. Chicago Truck Drivers Etc.,* 585 F.2d 210, 217 (7th Cir.1978). The standard for granting a motion for a more definite statement is whether the complaint is so vague that a party cannot reasonably be required to frame a responsive pleading. 5 Wright & Miller, *Federal Practice and Procedure* § 1216 (1969).

■ In this case, the Secretary's counterclaim satisfies the requirements of Rule 8. With respect to Hoekenga, the counterclaim specifies the acts and omissions allegedly comprising breaches of fiduciary duty on the part of the Fund's trustees, the time period during which Hoekenga was a trustee, and the legal bases for the claims.[3]

---

1. On May 24, 1982, this Court issued a Memorandum Opinion and Order in which we erroneously referred to the original plaintiffs and the Central States, Southeast and Southwest Pension Fund interchangeably as "the Fund." *McDougall, et al. v. Donovan,* 539 F.Supp. 596 (N.D.Ill.1982). We correctly refer in this opinion to the two parties separately as "the Trustees" and "the Fund."

2. Hoekenga and the Fund each suggest in their motions for more definite statement that the counterclaim is somehow "incomprehensible" on its face because they dispute that the breaches alleged and the relief sought pertain to Hoekenga or the Fund, respectively. These contentions will be more appropriately addressed in the following discussion regarding their motions to dismiss.

3. Hoekenga disputes the dates that the Secretary alleges to be his tenure as trustee. That the dates of his trusteeship are in issue, how-

Taken together, these allegations give Hoekenga fair notice of the claims against him and the grounds upon which they rest. With respect to the Fund, the activities from which the Secretary seeks to enjoin the Fund are enumerated with sufficient specificity.[4]

## II.

Next, counterdefendants Hoekenga and Trustees respectively move under Rule 10(b) for an order compelling separate statements of the claims against them. The Secretary's counterclaim lists and classifies the transactions and occurrences upon which he bases his claims.[5] Many if not most of the alleged actions were on-going; the Secretary asserts that the transactions spanned the tenures of the various counterdefendant trustees. Although the Secretary does not attempt to specify which of the transactions occurred or were occurring during each individual trusteeship, allegations as to the dates of tenure of the various trustees are set forth.[6]

 Hoekenga and the Trustees contend that the Secretary's failure at the pleading stages to link specific transactions with specific trusteeships will cause the case to "explode into unavoidable confusion."[7] Fear of explosion is not the appropriate standard. Rule 10(b) simply requires "that each claim founded on a separate transaction or occurrence be stated in a separate count '*whenever a separation facilitates the clear presentation of matters set forth.*'" *Mathes v. Nugent, supra,* 411 F.Supp. at 972 (emphasis added). In his counterclaim, the Secretary has set forth the transactions and occurrences giving rise to his claims in separate paragraphs.[8] He has indicated that each allegation pertains to each trustee during his respective tenure. Under Rule 10(b), where the gist of the complaint is a scheme, plan or course of conduct, there is no requirement that each claim be stated separately merely because all the defendants may not be involved in each act or transaction. *Securities and Exchange Commission v. Quing N. Wong,* 252 F.Supp. 608, 614 (D.P.R.1966), 5 Wright & Miller, Federal Practice and Procedure § 1324 (1969). The Secretary's counterclaim is sufficiently clear; further separation of his claims is unnecessary.[9]

## III.

Counterdefendants Hoekenga and the Fund each move to dismiss the Secretary's

---

ever, does not render the complaint "vague and ambiguous."

4. The Court notes that the Trustees have been able to frame responsive pleadings to the counterclaim. The relief sought against the Fund turns on virtually the identical acts and omissions as those alleged against the Trustees.

5. Counterclaim ¶¶ 8–12.

6. Counterclaim ¶ 5.

7. Trustees' Motion for Order Compelling Separate Statement of Claims at 4.

8. Note 5, *supra.*

9. The Fund moves, in the alternative, to strike service of process on the ground that there was no court order providing for joinder of the Fund as a counterdefendant. The Fund reasons that Fed.R.Civ.P. 13(h), which pertains to the joinder of additional parties in counterclaims and cross-claims, must be read in light of Rule 21, which pertains to misjoinder and non-joinder of parties. This argument so misinterprets the Federal Rules of Civil Procedure that it is barely worthy of comment. Rule 13(h) provides that persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20. The joinder of the Fund as a counterdefendant is appropriate under Rule 20(a), which permits joinder of defendants if there is a right to relief asserted against them jointly, severally or in the alternative and there will be a common question of law or fact. Rule 21 pertains to necessary parties not added and to "misjoined" parties, *e.g.,* parties incorrectly named, not permitted by law to be tried jointly, or *incorrectly* joined under Rule 20(a). *See* 7 Wright and Miller, Federal Practice and Procedure § 1683 (1969). Rule 21 is thus irrelevant to the Secretary's joinder of the Fund. Moreover, reading the Rule 21 requirement of a court order into Rule 13(h) would ignore the 1966 amendment to Rule 13(h), which eliminated the requirement of a court order when adding parties in a counterclaim or cross-claim. Fed.R.Civ.P. 13, Note on Amendments.

counterclaim under Rule 12(b).[10] Their motions will be discussed separately.

### 1. *Motion of Hoekenga*

Hoekenga seeks dismissal of the claims against him on the ground that the transactions alleged in the counterclaim as the basis for the trustees' individual liability occurred before and after—but not during—his tenure as trustee.

It is true, as Hoekenga points out, that ERISA § 409(b), 29 U.S.C. § 1109(b) limits a fiduciary's liability for breach of duty to those breaches committed during his tenure.[11] Hoekenga asserts that his term of service as trustee began in May, 1977, and concluded in February, 1978.[12] Therefore, he contends, he cannot be liable for the alleged initial purchase of a private aircraft around January 1, 1975,[13] nor for the purchase of the used Falcon 20F aircraft on May 31, 1979.[14]

■ Without reaching the question at this point of whether Hoekenga was a trustee at those particular times and whether liability arises under ERISA for those particular acts, we hold that the counterclaim does state a claim against Hoekenga and will not be dismissed. The Secretary alleges on-going breaches of fiduciary duty, among other things, the retention, ownership, modification and use of private aircraft.[15] These occurred during Hoekenga's tenure, and, taking as true the allegations of the counterclaim as we are required to do when ruling on a motion to dismiss, *Mathers Fund, Inc. v. Colwell,* 564 F.2d 780, 783 (7th Cir.1977), Hoekenga was party to the

acts. Moreover, even if the investments that allegedly constitute a breach of duty or a prohibited transaction were entered into prior to Hoekenga's term of office, it has been held that a successor trustee has a duty to dispose of prior investments violative of ERISA upon assuming his responsibilities. *Morrissey v. Curran,* 567 F.2d 546, 548–49 (2d Cir.1977). Thus, the Secretary has stated a claim against Hoekenga upon which relief may be granted.[16]

### 2. *Motion of the Fund*

The Fund moves to dismiss the counterclaims against it on several grounds, namely that: (1) it is not a "fiduciary" within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), and is thus not a proper defendant to a claim brought pursuant to ERISA § 409, 29 U.S.C. § 1109; (2) it is not a proper party because no separate and distinct relief has been sought against it; (3) the relief requested is improper; and (4) the action is barred by the statute of limitations. None of these arguments persuades the Court that the Fund's motion to dismiss should be granted.

■ The Fund's first three objections are addressed together. Initially, it should be noted that pursuant to ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1), employee benefit plans (such as the Fund) may sue and be sued as entities under the provisions of ERISA. This the Fund does not dispute; it does, however, contend that it is *not* an appropriate party defendant in a suit brought under ERISA § 409, 29 U.S.C. § 1109, which deals with liability for breach

---

**10.** The CCT's motion to dismiss the Secretary's counterclaim was denied by order of this Court on May 24, 1982. *McDougall, et al. v. Donovan,* 539 F.Supp. 596 (N.D.Ill.1982). *See* Note 33, *infra.*

**11.** 29 U.S.C. § 1109(b) provides:
No fiduciary shall be liable with respect to a breach of fiduciary duty under this subchapter if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary.

**12.** Memorandum Brief in Support of Counter-defendant Hoekenga's Motions under Sections 10(b), 12(b) and 12(e) at 1. The Secretary's

counterclaim alleges that Hoekenga's tenure ran from October, 1976, to April, 1978.

**13.** *See* Counterclaim ¶ 8.

**14.** *See* Counterclaim ¶ 12.

**15.** *See* Counterclaim ¶¶ 9, 10. The Court reserves ruling on whether the activities alleged actually were violations of ERISA. At this point, we simply rule that the Secretary has sufficiently stated a claim against Hoekenga.

**16.** Hoekenga's request for oral argument on his motions is denied.

of fiduciary duty.[17] The Fund argues that only fiduciaries may be sued under this provision, and that the Secretary's dispute is properly with the trustees alone. This interpretation of § 409 was rejected by this Court as too narrow in denying CCT's motion to dismiss it as a defendant to the counterclaim. *McDougall, et al. v. Donovan*, 539 F.Supp. 596 (N.D.Ill.1982). As we pointed out at that time, ERISA grants the Secretary broad authority to bring civil actions "(A) to enjoin any act or practice which violates any provision of [Title I of ERISA], or (B) to obtain other appropriate relief (i) to redress such violation, or (ii) to enforce any provision of [Title I]." 29 U.S.C. § 1132(a)(5) (1976). The equitable enforcement authority granted the Secretary is not limited to actions against fiduciaries, even if the violation at issue is derived from a section of the statute that governs the conduct of pension plan fiduciaries. *McDougall, supra* at 598; *see also Freund v. Marshall & Ilsley Bank*, 485 F.Supp. 629, 641–42 (W.D.Wis.1979).

Just as it is appropriate, if not necessary, in an action premised on fiduciary breach to join as defendant a party-in-interest who dealt with the trustees, *see McDougall, supra*, it is appropriate to join the plan itself. The relief sought in the instant case intimately involves the Fund, affecting its assets and administration. It may be correct, as the Fund asserts, that since the present trustees are defendants to the counterclaim, effective relief could be granted without joinder of the Fund as counterdefendant. Nonetheless, joinder of the Fund is clearly proper under the permissive joinder provisions of Fed.R.Civ.P. 20(a), and it is conceivable that as this litigation unfolds, the Fund may become a necessary party inasmuch as provisions regarding its future administration may be required for complete relief.[18] Furthermore, in light of Congressional intention to provide the Secretary "the full range of legal and equitable remedies in both state and federal courts," 1974 U.S. Code Cong. & Admin.News, S.Rpt. No. 93–127, 93d Cong., 1st Sess., p. 4639, 4838, 4871, we hold that the remedies sought by the Secretary are proper and within his power, and joinder of the Fund as a counterdefendant does not in any way overreach or abuse his equitable discretion.

**17.** ERISA § 409(a), 29 U.S.C. § 1109(a) provides in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

**18.** The Second Circuit addressed this question in a similar action brought under, *inter alia*, ERISA § 404(a), 29 U.S.C. § 1104(a), for breach of fiduciary duty in the administration of three pension plans. *Marshall v. Snyder*, 572 F.2d 894 (2d Cir.1978). Defendants to the action were, *inter alia*, past and present trustees as well as the three pension plans in question. In affirming an order of the district court enjoining all defendants *pendente lite* from certain transactions involving the payment of pension fund assets, the Court discussed the propriety of permitting joinder of the plans themselves as defendants:

> It may be that, inasmuch as the trustees of the Plans are defendants in the action, effective relief can be granted without joinder of the three plans as parties to the proceeding. The plans [sic], however, are clearly proper if not indispensable parties to the proceeding, and it would appear that if, as may be unavoidable, the Secretary will press for very broad relief affecting many aspects of the three plans and their administration, they should be joined as proper parties defendant which may later become necessary parties. Joinder of the plans as parties will provide assurance that complete relief can be accorded among those already parties, and including the plans themselves, as Rule 19(a) of the Rules of Civil Procedure contemplates, and it is clear, of course, that the plans may properly be joined under Rule 20(a) in any case, even though they may not be interested in obtaining or in defending against all of the relief demanded.

572 F.2d at 897. *See also Marshall v. Glass/Metal Association and Glaziers and Glassworkers Pension Plan*, 507 F.Supp. 378 (D.Hawaii 1980), an ERISA action under 29 U.S.C. § 1104(a) premised on breach of fiduciary duty wherein both the trustees and the plan itself were parties defendant.

Finally, the Fund asserts that the statute of limitations set forth in ERISA § 413, 29 U.S.C. § 1113 bars the Secretary's counterclaim.[19] The Fund contends that the three-year limitations period of § 1113(a)(2)(A) applies as a result of the Secretary's averment in his answer to the Trustee's complaint that in January, 1976, the Department of Labor began investigating the Fund's use of a private jet aircraft.[20] The Fund reasons from this averment that the limitations period commenced in January, 1976, when the Department of Labor began its investigation, and, as the Secretary filed his counterclaim in December of 1981, his action is barred.

■ We reject the Fund's interpretation of the January, 1976, date as the time at which the Secretary learned of the alleged breaches. Indeed, most of the acts and omissions alleged by the Secretary occurred *after* January, 1976. Moreover, the gravamen of the Secretary's counterclaim is the 1979 purchase of a Falcon 20F jet aircraft, and the on-going use of such private aircraft, placing his action well within even the most conservative application of § 1113(a).[21]

### IV.

Before the Court are several motions requesting summary judgment. The Secretary has moved for partial summary judgment on his counterclaim, specifically on his claim that the 1979 acquisition by the Fund of the Falcon 20F was a prohibited transaction within ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A).[22] The Trustees have filed

---

**19.** 29 U.S.C. § 1113(a) provides in relevant part:

No action may be commenced under this subchapter with respect to a fiduciary's breach of responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach of violation was filed with the Secretary under this subchapter.

**20.** Answer of Secretary ¶ 2.

**21.** The Fund's request to set oral argument on its motions is denied.

**22.** Counterdefendants Hoekenga and the Fund object to and move to strike the Secretary's motion for partial summary judgment. In support of their motions to strike, the counterdefendants argue that a motion for summary judgment under Fed.R.Civ.P. 56(a) is inappropriate while motions to dismiss are pending. This argument is not supported by the language of Rule 56 nor the caselaw interpreting it.

Rule 56(a) provides:

A party seeking to recover upon a claim, counterclaim, a cross-claim or to obtain a declaratory judgment may, *at any time after the expiration of 20 days from the commencement of the action* or after service of a

motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof.
(Emphasis added). Prior to a 1946 amendment, Rule 56(a) provided that a party could move for summary judgment "at any time after the pleading in answer to [the claim, counterclaim, or cross-claim] has been served." The amendment substituted the 20-day provision in order to permit earlier summary judgment motions and thereby expedite litigation. 6 Moore's Federal Practice ¶ 56.01[3] (2d ed. 1982). There is no suggestion in the language of Rule 56(a) as amended that a Rule 12(b) motion invokes an exception to the policy of expedited summary judgment.
Neither does relevant caselaw support counterdefendants' interpretation. For example, in *Stein v. Oshinsky,* 348 F.2d 999 (2d Cir.1965), *cert. denied,* 382 U.S. 957, 86 S.Ct. 435, 15 L.Ed.2d 361, defendants filed a pre-answer motion to dismiss under Rule 12(b). Plaintiff countered with a Rule 56 motion for summary judgment. In rejecting defendants' argument that the summary judgment motion was premature, the Court explained that "one of the purposes of the 1946 amendment [to Fed.R. Civ.P. 56(a)] was to permit a plaintiff to move for summary judgment while a pre-answer rule 12(b) motion was pending." 348 F.2d at 1001, citing 6 Moore, Federal Practice ¶ 56.07 (2d ed.1953). *See also First American Bank v. Equity Corp.,* 89 F.R.D. 81, 87 (D.D.C.1981); *Citizens for Clean Air, Inc. v. Corps. of Engineers, United States Army,* 349 F.Supp. 696, 698 n. 1 (S.D.N.Y.1972). Accordingly, the motions to strike the Secretary's motion for partial summary judgment are denied.

a cross motion for partial summary judgment on the same issue of the counterclaim and have also moved for summary judgment on their complaint.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment in its favor as a matter of law. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). Where, as here, cross-motions for summary judgment are filed, the court is not to assume that there are no issues of material fact, but instead make an independent determination based on the affidavits and other proof submitted by the parties in support of their respective motions. 10 Wright and Miller, *Federal Practice and Procedure* § 2720 (1973). *See Case & Co., Inc. v. Board of Trade of City of Chicago,* 523 F.2d 355, 360 (7th Cir.1975). Upon examination of the depositions, affidavits and documents submitted by the parties, this Court concludes that there are no material issues in dispute and that judgment may be rendered as a matter of law.

A review of the undisputed facts surrounding the transaction in question is set forth as follows. In December, 1978, CCT executed an agreement with Falcon to purchase a new Falcon 20F jet aircraft, Falcon 387. At that time, CCT owned an older 20F, Falcon 313. No provision was included in the purchase agreement as to the trade-

in of Falcon 313, which CCT had purchased from Falcon in 1975 for $2,595,000. The two parties to the agreement had discussed such a trade-in, however, as well as the possibility that provision for the trade-in could be made during the following year through an amendment to the agreement.[23]

On March 21, 1979, the Board of Trustees of the Fund voted to authorize and direct the executive director of the Fund "to submit an offer to purchase from Falcon Jet Corporation, at a purchase price of $2,900,000, the Falcon 20F aircraft which Falcon Jet was acquiring from Central Conference of Teamsters."[24] On March 23, 1979, the executive director delivered to a Falcon representative a document dated March 21, 1979, indicating the desire of the Board of Trustees to purchase the aircraft at a price of $2,900,000.[25]

On May 30, 1979, the CCT and Falcon amended their aircraft purchase agreement of December, 1978. The amendment provided for the trade-in by CCT of the used Falcon 313 at a stipulated value of $2,900,000.[26] The aircraft was delivered to Falcon on May 31, 1979, at the Wilmington, Delaware, airport.[27]

Also on May 30, 1979, the Board of Trustees of the Fund entered into a purchase agreement with Falcon, contracting to purchase the Falcon 313 for a price of $2,935,000.[28] Delivery was set for and executed

---

**23.** Deposition of William E. Koczor at 25.

**24.** Complaint, Exhibit A at 5, citing Pension Fund Minutes, March 21, 1979, Item No. 58.

**25.** The document reads as follows:
"For several years the Pension Fund has owned and operated a jet airplane which, because of environmental and other needed changes, and other factors, has become inadequate to service properly the requirements of the Fund.
"Based upon a review of current marketplace conditions, it has been determined that the best alternative open to the Fund is the acquisition of a specific Falcon 20F aircraft which is known to be in excellent condition and which you are reportedly acquiring from the Central Conference of Teamsters.

"Accordingly, the Trustees of the Pension Fund hereby offer to purchase said aircraft from you, at a purchase price of $2,900,000 cash. Your early response will be greatly appreciated."
Complaint, Exhibit A at 5.

**26.** Appendix to Motion of the Secretary of Labor for Partial Summary Judgment (hereinafter Appendix of Secretary), Exhibit D–25, "Amendment Number 1 to the Aircraft Purchase Agreement."

**27.** Appendix of Secretary, Exhibit D–29, "Aircraft Delivery Receipt."

**28.** Appendix of Secretary, Exhibit D–53, "Used Aircraft Purchase Agreement Between Falcon Jet Corporation and Central States, Southeast and Southwest Areas Pension Fund."

upon May 31, 1979, at the Wilmington, Delaware, airport.[29]

At issue in both the Trustees' motion for summary judgment on their complaint and the cross-motions for partial summary judgment on the counterclaim is whether the purchase of the Falcon 313 by the Trustees from Falcon was a "prohibited transaction" within ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A). For the reasons set forth below, the summary judgment of the Trustees on their complaint will be denied, and partial summary judgment will be granted in favor of the Secretary on his counterclaim.

■ Each provision of ERISA must be interpreted in light of the Congressional intent underlying the Act. ERISA resulted from concern over the rapid growth in size, scope and number of employee benefit plans, many of which had inadequate safeguards to protect the requisite funds. Congress passed the Act with the express purpose of

> protect[ing] ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, *by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans,* and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

29 U.S.C. § 1001 (emphasis added).

Guidelines governing the conduct of plan fiduciaries are contained in several sections of the Act. Section 404, 29 U.S.C. § 1104, sets forth the general standard of fiduciary duty. A fiduciary is required to discharge his duties "solely in the interest of the participants and beneficiaries" and

(A) for the exclusive purpose of:

> (i) providing benefits to participants and their beneficiaries; and

> (ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims ...

29 U.S.C. § 1104(a)(1).

Rather than leaving all fiduciary transactions to be judged by the general § 1104 standard, Congress also enacted § 1106, which prohibits fiduciaries from causing the plan to engage in certain specified transactions.[30] These prohibitions evince Congres-

---

**29.** *Id.*

**30.** 29 U.S.C. § 1106 provides in full:

(a) Except as provided in section 1108 of this title:

(1) A fiduciary with respect to a plan·shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

(A) sale or exchange, or leasing, of any property between the plan and a party in interest;

(B) lending of money or other extension of credit between the plan and a party in interest;

(C) furnishing of goods, services, or facilities between the plan and a party in interest;

(D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or

(E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

(2) No fiduciary who has authority or discretion to control or manage the assets of a plan shall permit the plan to hold any employer security or employer real property if he knows or should know that holding such security or real property violates section 1107(a) of this title.

(b) A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

(c) A transfer of real or personal property by a party in interest to a plan shall be treated as a sale or exchange if the property is sub-

sional desire to prevent transactions that offer a high potential for loss of plan assets or for insider abuse. *Marshall v. Kelly,* 465 F.Supp. 341, 354 (W.D.Okla.1979). They were designed to prevent a trustee "from being put into a position where he has dual loyalties and therefore he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *N.L.R.B. v. Amax Coal Co., a Division of Amax, Inc.,* 453 U.S. 322, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672 (1981), citing H.R.Conf.Rep. No. 93–1280, 93d Cong., 2d Sess., 296, 309, U.S.Code Cong. & Admin.News 1974, p. 5089.

■ With the exception of the provision in § 1108 for the granting of exemptions by the Secretary on a case-by-case basis,[31] it is apparent that Congress intended § 1106 to be virtually a *per se* prohibition against the enumerated transactions. In interpreting the prohibitions of § 1106(b), the Third Circuit discussed the provision in light of the underlying policy goals of ERISA.

> We note the national public interest in safeguarding anticipated employee benefits by establishing *minimum* standards to protect employee benefit plans. The substantial growth of plans affecting the security of millions of employees and their dependents, as well as the limited

resources of the Department of Labor in the enforcement of ERISA, leads us to believe that Congress intended to create an easily applied per se prohibition of the type of transaction in question.

*Cutaiar v. Marshall,* 590 F.2d 523, 529 (3d Cir.1979). The *per se* nature of the prohibitions is emphasized by the fact that whether one of the provisions has been violated does not depend on whether any harm results from the transaction. *Marshall v. Kelly, supra* at 354.

■ This policy underlying § 1106(a) is important in analyzing whether the Trustees' purchase of the Falcon 313 was prohibited under ERISA. 29 U.S.C. § 1106(a)(1)(A) provides that:

> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest.

It is not disputed that the Fund is an employment benefit plan as defined by ERISA § 3(3), 29 U.S.C. § 1002(3), that the Trustees are fiduciaries as defined by ERISA § 3(21), 29 U.S.C. § 1002(21), and that rela-

---

ject to a mortgage or similar lien which the plan assumes or if it is subject to a mortgage or similar lien which a party in interest placed on the property within the 10-year period ending on the date of the transfer.

**31.** Section 1108(a) provides:

The Secretary shall establish an exemption procedure for purposes of this subsection. Pursuant to such procedure, he may grant a conditional or unconditional exemption of any fiduciary or transaction, or class of fiduciaries or transactions, from all or part of the restrictions imposed by sections 1106 and 1107(a) of this title. Action under this subsection may be taken only after consultation and coordination with the Secretary of the Treasury. An exemption granted under this section shall not relieve a fiduciary from any other applicable provision of this Act. The Secretary may not grant an exemption under this subsection unless he finds that such exemption is—

(1) administratively feasible,

(2) in the interests of the plan and of its participants and beneficiaries, and

(3) protective of the rights of participants and beneficiaries of such plan.

Before granting an exemption under this subsection from section 1106(a) or 1107(a) of this title, the Secretary shall publish notice in the Federal Register of the pendency of the exemption, shall require that adequate notice be given to interested persons, and shall afford interested persons opportunity to present views. The Secretary may not grant an exemption under this subsection from section 1106(b) of this title unless he affords an opportunity for a hearing and makes a determination on the record with respect to the findings required by paragraphs (1), (2), and (3) of this subsection.

In 1981, after the Department of Labor sent a letter to the Fund expressing concern over the Fund's purchase of a private aircraft, the Trustees applied for and were denied a § 1108(a) exemption with respect to the Falcon 313 purchase.

tive to the Fund, the CCT is a party in interest as defined by ERISA § 3(14)(D), 29 U.S.C. § 1002(14)(D). It is also clear that there was no *direct* transaction between the Fund and the CCT. The question, then, is whether the purchase of the Falcon 313 was an *indirect* transaction between the Fund and the CCT within the prohibition of 29 U.S.C. § 1106(a)(1)(A).

In *Amax, supra,* the Supreme Court applied § 1106(a)(1)(E), which prohibits acquisition, on behalf of a plan, of certain employer security or employer real property. The Court emphasized that the purpose of this and related provisions was to insulate the trust from the employer's interest, and to ensure that the exclusive authority and discretion to arrange and control the assets of the plan rest in the trustees alone, and not in the employer or union who might be responsible for the trustees' appointments. 101 S.Ct. at 2796. Just as § 1106(a)(1)(E) seeks to protect the judgment of the trustees against influences exerted by employers in the context of security and real property purchases, § 1106(a)(1)(A) seeks more generally to protect against influences exerted by all "parties in interest." "Party in interest" is defined to include employee organizations any of whose members are covered by the plan. 29 U.S.C. § 1002(14)(D). Congress therefore intended § 1106(a)(1)(A) to prohibit dealings between, *inter alia,* a plan and any union whose members are among the beneficiaries of the plan.

A direct transaction between the Trustees and the CCT would have been precisely the type of transaction at which § 1106(a) is aimed. The Trustees argue vigorously that the presence of Falcon as an intermediary added an "arms length" element and took the transaction out of the prohibition. We do not believe that Congress intended the prohibitions of § 1106 to be so easily circumvented. The Trustees undisputedly knew that the Falcon 313 was being traded in to Falcon by the CCT. A bid for the plane was submitted by the Trustees to Falcon in an amount equivalent to that obtained by the CCT as trade-in value. Falcon sold the plane to the Trustees for an amount $35,000 higher than the bid and on the same day that the plane was traded in. Were we to interpret the "indirect transaction" prohibition of § 1106 so narrowly as to exclude the transaction at hand, virtually any transaction prohibited directly could be legitimized by the insertion of a third party, a party who, incidentally, could profit from its role.

Nonetheless, the Trustees urge that rules governing whether a transaction is to be considered a "sham" and thus reconstructed for tax purposes should apply in determining whether a transaction is an "indirect" transaction prohibited by § 1106. The test under the tax laws is whether the transaction in question had economic substance and a business purpose independent of its tax-saving purpose. *See U.S. v. Cumberland Public Service Co.,* 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251 (1950), and *Falkoff v. Commissioner of Internal Revenue,* 604 F.2d 1045 (7th Cir.1979).

The Trustees' analogy to the tax laws is inapposite. Although the Trustees list business reasons other than avoidance of § 1106 that may have motivated the Fund, Falcon and the CCT each to enter the Falcon 313 transaction, Congress did not exclude from § 1106 transactions that have independent business purposes, just as it did not exclude transactions that are "fair" under some independent measure. Congressional intent to eliminate all transactions with even the *potential* to bias the independent judgment of pension plan fiduciaries must be followed. Accordingly, we hold that the acquisition of the Falcon 313 by the Trustees of the Fund was a prohibited transaction within the meaning of ERISA § 406, 29 U.S.C. § 1106.

## V.

For the reasons stated herein, the Trustees' motion for summary judgment on

their complaint is denied. Partial summary judgment is entered in favor of the Secretary on his counterclaim.[32] The motions of counterdefendants Hoekenga and the Trustees for an order compelling separate counts are denied. The motions of the Fund and Hoekenga for a more definite statement are denied. The motions of counterdefendants Hoekenga and the Fund to dismiss are denied.[33] The motions of the Fund and Hoekenga to strike the counterclaim are denied. It is so ordered.[34]

---

32. Defendants to the Secretary's counterclaim against whom summary judgment is entered are the Fund, the CCT and McDougall, O'Malley, Pulliam, Baker, Robbins, Winstead, Yates and Jenning, individually and as trustees. It is not disputed that counterdefendant Hoekenga was not a trustee during or after the Falcon 313 acquisition. Therefore, consistent with the portion of this opinion denying Hoekenga's motion to dismiss, Hoekenga is not party to this entry of partial summary judgment.

33. CCT moves this Court to amend its order of May 24, 1982, to provide for certification under 28 U.S.C. § 1292(b), so that CCT may appeal the denial of its motion to dismiss. *See* Note 10, *supra.* This motion as well as CCT's motion for oral argument on the motion are denied.

Section 1292(b) imposes three requirements: (1) the order must involve a controlling question of law; (2) there must be substantial ground for difference of opinion; and (3) an immediate appeal must materially advance the ultimate termination of the litigation. *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.1974), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125; *Robak v. United States,* No. 77 C 3595 (N.D.Ill. Sept. 28, 1979).

Without deciding whether the May 24 order involves a controlling question of law upon which there is substantial ground for difference of opinion, this Court denies CCT's motion for the reason that interlocutory appeal would not materially advance the ultimate termination of the litigation. With the issuance of this opinion, there is a final judgment in the form of partial summary judgment against the CCT, from which the CCT may appeal the issue of whether a non-fiduciary may be held liable under 29 U.S.C. § 1106.

34. This opinion does not dispose of all the issues in this case. The parties are directed to meet as soon as possible (and, in any event, *prior to* December 3, 1982) and attempt to negotiate a mutually-agreeable disposition of these remaining issues. The status hearing of this cause is continued to December 3, 1982, at 10:30 a.m., at which time the parties are to bring in a stipulated order disposing of the remaining issues. In the event these issues are not settled, cross-motions for summary judgment on the remaining issues, together with briefs in support, are to be filed on December 3 at the status hearing.