Ronald D. RAFF, Co–Trustee, Plaintiff,

v.

Robert L. BELSTOCK, Co–Trustee, Defendant.

Civil No. 93–2330 FSL.

United States District Court, N.D. California.

July 15, 1996.

Lawrence Koncz, San Francisco, CA, for plaintiff.

Peter Huppert, San Francisco, CA, for defendant.

## ORDER RE FEES AND EXPENSES

LANGFORD, Chief United States Magistrate Judge.

## INTRODUCTION

This case was tried before the court on June 17 and 18, 1996. Appearing for Plaintiff was Lawrence Koncz, Esq. Appearing for Defendant was Peter Huppert, Esq. The parties presented arguments and exhibits and both parties testified as witnesses. The record in the case having been fully considered, and good cause appearing,

IT IS HEREBY ORDERED that Defendant shall pay to Plaintiff the sum of $26,-415.25 for attorney's fees, or such greater amount as shall be established by motion, $1,650 for accounting fees and $3,850 for actuarial expenses and $7,500 for the penalty paid to the Internal Revenue Service. Plaintiff shall formally discharge Defendant as trustee of the plans, in writing.

## BACKGROUND

This case is an action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. section 1001, et seq. and specifically, §§ 1109(a) and 1132(a)(3), for breach of fiduciary duty, an accounting of approximately $220,000.00 in pension fund assets which were allegedly misappropriated by Defendant, and for an award of attorney fees and costs.

The parties were friends and have known each other for over 35 years. Dr. Raff, D.D.S. (Plaintiff), incorporated his dental practice and set up the pension fund for himself and his employees (usually 3 or 4 in number) and named his wife Marsha as co-trustee, with Defendant. When the Raffs were divorced, Plaintiff and Defendant became co-trustees. Dr. Raff has three roles with the plan: he is the sole shareholder of the employer, the dental corporation, he is a beneficiary, and he is a fiduciary.

## PROCEDURAL HISTORY

The complaint was filed on June 21, 1993. The default entered on August 17, 1993, was subsequently set aside on September 13, 1993 by Hon. William H. Orrick.

Defendant filed his answer on September 15, 1993 which affirmatively alleged that he was completing a full accounting as requested by Plaintiff.

Plaintiff obtained a Writ of Attachment against Defendant's home in October, 1993. This was still in place at the time of trial.

A Stipulated Discovery Order was issued on November 17, 1993. Discovery of relevant bank statements, cancelled checks, evidence of withdrawals, etc., was ordered.

A status conference was held on December 22, 1993 before Judge Orrick. At that time, Defendant had not provided the preliminary accounting. Counsel for the Defendant indicated that the preliminary accounting was almost complete. As of February 3, 1994, Plaintiff had not yet received an accounting.

Both parties consented to trial before a magistrate judge.

## MOTION TO DISMISS

At the beginning of trial, Defendant moved to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted. (Fed.R.Civ.P. 12(b)(6)).

■ Defendant argues that the law as enunciated by the Supreme Court is that in an action to recover damages for breach of fiduciary obligations by a trustee under a retirement plan governed by the provisions of ERISA, only the plan itself may recover for damages sustained by it, not for damages claimed between fiduciaries. *Massachusetts Mut. Life Ins. Co. v. Russell* 473 U.S. 134, 141-2, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1984); *see also Total Plan Services, Inc. v. Texas Retailers Assn.,* 932 F.2d 357 (5th Cir.1991).

Defendant claims that because Plaintiff's dental corporation, rather than the Plan, paid the expenses allegedly caused by Defendant's breach, i.e. the accounting and actuarial expenses, Internal Revenue Service (IRS) penalty and attorney's fees, that Plaintiff may not recover these expenses from Defendant.

Plaintiff responds that he was reluctant to expend plan funds, which had been depleted by Defendant. The balance in the plan bank accounts when he discovered the withdrawals was $8,000 and the records were not in order. Since he was the sole shareholder of the employee dental corporation, as well as fiduciary of the plan, he chose to expend the corporation's funds to protect the interests of the plan.

Furthermore, he is authorized by the Agreement of Trust to act on behalf of the plan, as provided in Article II, subsection (f), page 5, i.e. that the Trustee shall have the power to sue or to defend or otherwise deal with and settle claims in favor of or against the trust and the policies held in trust. Subsection (h) grants the Trustee power to employ such agents and counsel in connection with the administration of the trust as in his absolute discretion he may deem advisable, to pay the reasonable expenses and compensation from the Trust Estate.

Defendant relies on cases which are distinguishable from this case.

In one case, the Court of Appeals affirmed the district court ruling dismissing a complaint and refused to find that ERISA preempted state court jurisdiction over a suit involving pension and fiduciary claims and denied the motion of plaintiff-appellants, who were fiduciaries, for the federal court to enjoin state court proceedings. The district court had stated its intention to award attorney's fees to defendants, but had not rendered a decision, so the Court of Appeals remanded for that determination. *Total Plan Services, Inc. v. Texas Retailers Ass'n., Inc.,* 925 F.2d 142 (5th Cir.1991). The Court of Appeals also affirmed the district court's subsequent decision to deny the plaintiff-appellants' claim for compensation under ERISA for their expenses. *Total Plan Services v. Texas Retailers Ass'n,* 932 F.2d 357, 358 (5th Cir.1991). The Court held that *Total Plan* only raised a state law claim for breach of contract. The Court stated in dicta that, even if ERISA governed *Total Plan's* claim, that *Total Plan* could not recover under 29 U.S.C. § 1109(a), because its expenses were not "losses to the plan."

This statement by the court is gratuitous, not part of the substantive decision in this case. The *Total Plan* decision (the first one) was primarily focussed on the history and effect of the Anti–Injunction Act and had very little to do with ERISA.

In the other case on which Defendant relies, the Supreme Court held that "Congress did not intend the judiciary to imply a cause of action for extra-contractual damages caused by improper or untimely processing of benefits claims." *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. at 148, 105 S.Ct. at 3093. In that case a beneficiary of a benefit plan governed by ERISA successfully sued for damages caused by interruption of disability benefits when her benefits were terminated. Although she prevailed on that claim, the Court found that she was not entitled under ERISA to compensatory and punitive damages.

The Court based its decision on the intent of Congress that recovery for violation of ERISA § 409 (breach of fiduciary obligation)

inure to the benefit of the plan as a whole, not solely to an individual beneficiary recovering on her own behalf. *Id.*

In the case at bar, a co-trustee, Dr. Raff, has sued another co-trustee, Mr. Belstock, to obtain an accounting and repayment of plan assets wrongfully borrowed or invested by the co-trustee, in violation of § 409. Defendant is attempting to block reimbursement of the trustee, who advanced funds in order to protect the benefits of all employees of the corporation and the plan as a whole. Plaintiff acted to further the intent of Congress as stated by the Supreme Court.

■ To order Defendant to repay these expenses would be entirely consonant with the intent of the drafters of § 409. As stated by the Court in *Massachusetts Mutual:*

> A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary.

473 U.S. at 142, 105 S.Ct. at 3090.

In this case, Defendant misused plan assets, and Plaintiff was forced to turn to the court to recover them. Defendant did not render an accounting or repay funds until after Plaintiff filed suit. To permit Plaintiff to be reimbursed for his expenses caused by Defendant's breach would further the interests of the plan, rather than those of merely one beneficiary. Plaintiff is himself a plan beneficiary, it is true, the majority beneficiary, but his action against Defendant has benefited the other beneficiaries as well, by obtaining the return of the plan assets and an accounting by Defendant.

In a footnote, the Court goes on to describe who may sue under § 409, on behalf of the plan:

> Consistent with this objective, § 502(a)(2), the enforcement provision for § 409, authorizes suits for four classes of party-plaintiffs: the Secretary of Labor, participants, beneficiaries, and fiduciaries. Inclusion of the Secretary of Labor is indicative of Congress' intent that actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole. Indeed, the common interest shared by all four classes is in the financial integrity of the plan.

*Id.* at footnote 9.

In fact, the Court of Appeals for the Ninth Circuit has denied an award of attorney's fees to a plan, on the basis that it was not an enumerated party under § 409, e.g. where the plan itself is not actually a participant, beneficiary, or fiduciary. *Corder v. Howard Johnson & Co.*, 53 F.3d 225, 229–231 (9th Cir.1994). Under Ninth Circuit law, if the plan had sued defendant, and sought attorney's fees, it might not have been able to recover its fees and expenses.

Plaintiff, as a fiduciary, was authorized to sue under § 409.

Further on, in *Massachusetts Mutual,* the Court reiterated the availability of attorney's fees to a plaintiff suing on behalf of the plan: "ERISA authorizes the award of attorney's fees. See § 502(g), 88 Stat. 892 as amended, 29 U.S.C. § 1132(g)(1)." 473 U.S. at 147, 105 S.Ct. at 3093.

Plaintiff should be able to recover his attorney fees, regardless of the source of the funds to pay them originally, incurred in protecting the interests of the plan as a whole from Defendant's breach of his fiduciary duty.

For the same reasons, Plaintiff should be able to recover his other expenses caused by Defendant's breach of his fiduciary duty, namely the additional accounting expenses and the IRS penalty, since they were expended in protecting the assets of the plan as a whole.

Defendant's motion to dismiss is denied.

## TRIAL

By the time of trial, all funds had been accounted for, except for $5500, which remained in dispute. A check for this amount had been deposited by Defendant into his attorney's trust account. Defendant testified that this money was the repayment of two loans to an individual. In Defendant's Post Trial Brief, Defendant states that the $5500 has been paid over to the Raff Profit Sharing

Plan, after discovery of a discrepancy in the deduction twice of net payments for notes repurchased by defendant from the Plans.

Based on the evidence presented at trial, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff and Defendant were long-time friends. Defendant performed accounting services for Plaintiff's personal finances and for his dental practice. (Engagement letter, Def.Ex. A) Defendant advised Plaintiff to incorporate, and to establish a pension plan and a profit-sharing plan. Defendant was a co-trustee with Plaintiff's wife, Marsha. (Agreement of Trust dated June 18, 1971, Pltf. Ex. 1). When Plaintiff and his wife were divorced, Defendant and Plaintiff became co-trustees of both plans. Both co-trustees made investments on behalf of the plan. Plaintiff sought Defendant's advice, but Defendant made investments without seeking advice from Plaintiff. Defendant handled all accounting and reporting for the plans and filed their tax returns (Form 5500).

Both co-trustees had signed signature cards authorizing them to make deposits to and withdrawals from the plans' accounts at Great Western Bank. (Def.Ex. O & P). Plaintiff testified that he believed he was the only trustee authorized to make withdrawals from the accounts.

Starting in approximately 1989, Plaintiff became concerned that year-end reports and beneficiary summaries were not being prepared by Defendant in a timely manner. Defendant did not pay 1989 taxes and a lien was filed by the IRS. (Pltf.Ex. 10) Defendant testified that he was unable to prepare some reports fully because Plaintiff neglected to provide him with certain information, specifically brokerage information on stocks bought and sold on the plan's behalf. (Def.Ex. G, H, K and V) Defendant was able independently to obtain information on the stocks' value and any dividends paid.

By mid–1992, Plaintiff had hired another accounting firm to administer the plans, and Defendant did not prepare the report which would have been due for the fiscal year end-ing June 30, 1992. The last statement Defendant prepared was for fiscal 1991. Defendant testified that he considered his term as co-trustee as having ended December 30, 1992. He did not submit a written resignation, nor was he discharged in writing. Plaintiff asked Defendant to turn over documents to the new accounting firm, which he never did. The new accounting firm estimated that Plaintiff incurred fees in the amount of $1,650 to substitute for work that should have been done by Defendant. (Pltf.Ex. 9) The new plan administrator/actuary charged fees of $3,850 for work which was necessitated by Defendant's failure. (Pltf.Ex. 8).

In 1988 or 1989 Defendant told Plaintiff that the plans should be amended to conform with IRS requirements and that he would be ready if the IRS requested the amendments. Plaintiff learned from a friend that such amendments were due in 1988. He called Defendant with the information and Defendant said he would take care of it. Defendant never submitted plan amendments to the IRS.

The plans were amended by the new plan administrator hired by Plaintiff. Amendments were filed with the IRS and a penalty was negotiated and paid by Plaintiff per the agreement of February 12, 1996. (Pltf.Ex. 7).

In January, 1993, Plaintiff discovered that Defendant had withdrawn over two hundred twenty thousand dollars ($220,000) from the Pension and Profit Sharing bank accounts in thirty-five separate withdrawals. The plans' balances totalled $8,000. Plaintiff asked Defendant for an accounting. Defendant did not respond. In April, 1993, Plaintiff wrote Defendant a letter asking for an accounting for the missing funds. (Pltf.Ex. 2) Defendant testified that he responded by telephone that he was having family problems and would prepare the accountings. Plaintiff retained counsel on behalf of himself as co-trustee of the plan. In May, 1993, counsel wrote Defendant a letter asking for an accounting of the missing funds. (Pltf.Ex. 3) Defendant did not provide the accountings. In June, 1993, Plaintiff filed suit to compel an accounting pursuant to 29 U.S.C. section 1132(e), for damages for failure to file annual

returns, to amend the plans in a timely manner, and for attorney fees allowable under ERISA. Although at first Defendant's default was taken, he eventually obtained counsel and the case proceeded. Slowly.

The parties repeatedly appeared before the court with requests for continuances in order for Defendant to produce documents and provide an accounting. The parties attempted to negotiate a resolution and eventually the missing funds were repaid, with substantial interest, and some of the payments were made by Defendant. The missing funds had been invested in promissory notes securing loans and there was evidence that in some cases funds were paid in several installments, with no note being issued until the last installment had been paid to the borrower. Most if not all of the borrowers were accounting clients of Defendant. Defendant testified that he had told Plaintiff to whom he had loaned money and the approximate amounts in April, 1993.

Defendant testified that he invested in the promissory notes in order to obtain a better return on investment than was offered by the bank. He lent to borrowers who were clients of his accounting practice, whom he knew had substantial net worth and the ability to pay.

Defendant himself borrowed $9,000 as partial payment for a 1991 Cadillac Eldorado. (Def.Ex. Q) This money was deposited into Defendant's personal bank account, which is a joint account with his wife. Defendant testified that this loan was repaid, with interest at 9½%. Defendant also wrote a check on the plan account to pay a bill for computer services rendered to his accounting office.

By the time of the Pretrial Statement, in January, 1996, Defendant had provided to Plaintiff annual accountings, indicating account balances for all participants in each plan, and documentation that Plaintiff would accept. This was two and one-half years after suit was filed.

At trial, the only remaining issues were an amount of $5,500 still in dispute, and the Plaintiff's attorney's fees, in the amount of $26,415.25 (Pltf.Ex. 11), accounting fees of $1,650 (Pltf.Ex. 9) and actuarial expenses of $3,850 (Pltf.Ex. 8) and the $7500 penalty charged by the Internal Revenue Service for the late filing of plan amendments. (Pltf.Ex. 11) All these expenses were paid by the employer, Plaintiff's dental corporation.

## CONCLUSIONS OF LAW

Both co-trustees were fiduciaries of the Trust in accordance with 29 U.S.C. section 1002(21)(A). Plaintiff had delegated to Defendant the duty of administering the plans, securing necessary filings with the Department of Labor and the Internal Revenue Service, to keep the plans current in conformance with law, and to protect the legal status of the plan. (Agreement of Trust at p. 8—Plaintiff Exhibit 1)

By mid–1992, Defendant had failed to provide year-end beneficiary statements in a timely manner for the previous two years (fiscal 1991 and 1992).

By January, 1993, Defendant had withdrawn $220,000 from the Plans' accounts without the knowledge of Plaintiff, the co-trustee. Defendant had made loans to his clients and to himself, in many instances without collateral at the time the funds were disbursed, i.e. the promissory notes were only obtained some time after the funds were given to the borrower. Defendant borrowed money from the plan accounts on his own behalf and deposited the funds in his personal account.

■ A co-trustee has a duty to monitor the conduct of another trustee and to intervene if he suspects improprieties. *Pension Ben. Guar. Corp. v. Greene*, 570 F.Supp. 1483, 1487 (W.D.Pa.1983) (trustee resignation valid only when he has made adequate provision for continued prudent management of assets). A co-trustee otherwise could be found liable for the breach of a co-fiduciary under 29 U.S.C. section 1105. *Friend v. Sanwa Bank of California*, 35 F.3d 466, 471 (9th Cir.1994) ("Trustee liability likely would exist where newly-appointed successor was involved ... in a transaction with the plan.")

■ Transactions between a plan and a fiduciary are prohibited by 29 U.S.C. section 1106(b). Prohibited transactions include

loans from a plan to a fiduciary. *Davidson v. Cook,* 567 F.Supp. 225 (E.D.Va.1983).

▮▮▮ There is a per se ban on the transactions described above, which is emphasized by the fact that whether one of the provisions has been violated does not depend on whether any harm results from the transaction. *McDougall v. Donovan,* 552 F.Supp. 1206 (N.D.Ill.1982). This chapter was intended to prevent transactions which offered high potential for loss of plan assets or for insider abuse. The fact that prohibited loan is or ultimately may be repaid does not render loans lawful. *Marshall v. Kelly,* 465 F.Supp. 341 (W.D.Okla.1978); *Donovan v. Mazzola,* 716 F.2d 1226, 1230 (9th Cir.1983) (Transaction was a prohibited transaction under 29 U.S.C. § 1106(b)(2) because the individual[s] acted on both sides of the [loan] transaction).

▮▮▮ Consequently, regardless of whether there was any harm to the plan, Defendant engaged in a prohibited transaction, i.e. he made a loan from the plan to himself, a fiduciary of the plan. This transaction is prohibited regardless of whether any harm has come to the plan. This is a breach of his duty as a fiduciary.

One of the powers of a trustee of the plans is the power to invest. (Trust Agreement Article II(a) page 3, Plaintiff Exhibit 1).

▮▮▮ One of the duties of a fiduciary is prudent management of the plan's assets. *Eaves v. Penn,* 587 F.2d 453 (10th Cir.1978). Prudent management includes requiring sufficient collateral for loans. *Donovan,* 716 F.2d 1226, at 1231.

One of the provisions of the Trust Agreement is that a trustee may make loans to the Trustor (the dental corporation) but only with "adequate collateral and a fair rate of interest." (Trust Agreement at page 4)

▮▮▮ By making loans to the clients of his accounting practice, let alone the trustor, without adequate collateral, i.e. without promissory notes, at least until some time after funds had been disbursed, Defendant violated an explicit term of the Trust Agreement. Defendant also did not use prudent management of the plan's assets as required by 29 U.S.C. section 1104(a)(1)(B).

Attorney's fees may be awarded against an offending party in an ERISA action, pursuant to 29 U.S.C. section 1109(a), which provides, in pertinent part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

▮▮▮ The intent is that the offending party bear the costs of the award, rather than non-culpable, non-party plan participants. *Eaves,* 587 F.2d 453, at 464. (Court of Appeals remanded case to district court for determination "whether or not the 'common fund' theory should apply or *attorney's fees should be awarded personally against the breaching fiduciaries."* *Id.* at 465) (emphasis added).

▮▮▮ The factors to be considered in determining whether to award attorney fees in an ERISA case are stated in *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir.1980). These factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.* (citations omitted).

No one of the *Hummell* factors is necessarily decisive, and some may not be pertinent to a given case. *Carpenters Southern Cal. Admin. Corp. v. Russell,* 726 F.2d 1410, 1416 (9th Cir.1984).

▮▮▮ "Bad faith" may be interpreted as bad faith in conduct of litigation. *Tingey v.*

*Pixley–Richards West Inc.*, 958 F.2d 908, 909 (9th Cir.1992) (court found Plaintiff appeal not in bad faith). *See also United Brotherhood of Carpenters v. Endicott Enter., Inc.*, 806 F.2d 918, 923 (9th Cir.1986) (Question in determining bad faith is whether the suit is "the kind of vexatious litigation meant to be deterred by the imposition of attorney's fees.")

 In applying to the opposing parties the *Hummell* factors, the court finds:

### Regarding culpability:

Plaintiff did not provide brokerage account information to Defendant when requested.

Defendant engaged in a prohibited transaction, by making a loan to himself of plan funds. Defendant also did not manage investments prudently, and violated the explicit terms of the Trust Agreement, by making loans to others without collateral. Defendant also was late filing plan reports and neglected to amend the plans as required by the Internal Revenue Service.

### Regarding bad faith:

Plaintiff brought this litigation in good faith, as part of his duty as a fiduciary to intervene in the event of suspected wrongdoing by a co-trustee.

Defendant showed bad faith when he prolonged this litigation needlessly by delaying providing documents and accountings, even up to the very day of trial and beyond.

### Regarding the ability to pay fees:

Both parties are practicing professionals, both in business for many years and owning substantial assets. Defendant admits in his Trial brief on page 5, line 6, that he has the ability to satisfy any attorney's fee award.

### Regarding deterrence of others:

This issue may or may not be pertinent to this litigation. It is possible that co-trustees of other small plans may learn from Defendant's experience.

### Regarding whether the requesting party sought to benefit all participants or resolve a significant legal question regarding ERISA:

Plaintiff, while the primary beneficiary of the plans, also sought to protect the interests of his employees, the other participants in the plans. There is probably no significant legal issue involved. All the law in this case is settled.

### Regarding the relative merits of the parties' positions:

Plaintiff's counsel, at conclusion of the trial of this case, inquired of the court "What was I supposed to do?" In truth, Plaintiff had no choice but to bring this action. Once he suspected that Defendant had misappropriated plan funds, it was his duty as a fiduciary to intervene, to protect the plans' assets. He continued to pursue the case only because Defendant refused to provide documents and an adequate accounting. As of the day of trial there were still funds unaccounted for. There is no reason that this case has been going on for three full years, except for Defendant's refusal to cooperate in discovery, or to account for the funds in his care.

Defendant's apparent position of "No harm, no foul," is an inaccurate statement of ERISA law. A fiduciary may be guilty of a breach of his duty even if the plan suffers no harm or receives a profit from his investments.

Defendant's failure to file timely reports required Plaintiff to hire another accounting firm to backtrack and reconstruct the reports.

Because Defendant failed to amend the plans in a timely manner, and even assured Plaintiff that such amendments were not necessary, or could be done retroactively, the IRS assessed a penalty in the amount of $7500. Neither the employer nor the plan could claim this penalty as a tax deduction. This does not in any way signify, as Defendant has claimed, that the penalty could not have been paid by the plan.

Defendant further argues that fees and expenses may not be awarded because the employer, Plaintiff's dental corporation, paid for the IRS penalty, the accounting and actuarial expenses, and the attorney's fees necessitated by his fiduciary breach.

This flies in the face of the case law previously cited, which states that the costs of suit

to protect a plan should be borne by the culpable party, and not by the plan. *Eaves,* 587 F.2d at 464. Furthermore, Plaintiff should not be penalized for choosing to risk his own funds, rather than those of his employees' pension and profit-sharing plans. To require Plaintiff to pay the IRS penalty would shift the consequences of Defendant's breach onto Plaintiff. Fees and expenses should be awarded to Plaintiff.

A trustee must resign or be removed by a written document. *Pen. Ben. Guar. Corp.,* 570 F.Supp. at 1487; Agreement of Trust at pp. 10, 11 (Plaintiff Exhibit 1). Defendant has never resigned as trustee, nor has Plaintiff discharged him. This should be done in writing, as provided by the Agreement of Trust.

### ORDER

For all the above reasons, IT IS HEREBY ORDERED that Defendant shall pay to Plaintiff $26,415.25 for attorney's fees (or such greater amount as shall be established by motion), $1,650 for accounting fees and $3,850 for administration and actuarial expenses as well as the $7,500 penalty paid to the Internal Revenue Service. Furthermore, Plaintiff shall formally discharge Defendant as trustee, in writing. Plaintiff shall prepare a form of Judgment.